ISHEE, J.,
 

 for the Court:
 

 ¶ 1. Percy D. Hester Sr. (Hester) appeals a judgment from the Newton County Chancery Court ordering him to pay Sun-dra Hester Samples (Samples) $23,761 in back child support for the period of years from 1992 through 2006. Hester argues that the chancellor erred by (1) refusing to admit Samples’s Texas affidavit, which contradicted her trial testimony that she had never received child-support payments from 1992 to 2004, and (2) failing to credit Hester for certain payments he had made for his daughter’s benefit, such as rent money, college tuition, and other living expenses. Hester also requests that the Court award him attorneys’ fees for this appeal and remand the case back to the chancery court to impose sanctions against Samples and her attorney. Finding no error, we affirm the chancery court’s judgment, and we deny Hester’s requests for attorneys’ fees and sanctions.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Hester and Samples were married on February 28, 1992, in Hinds County, Mississippi. Shortly thereafter, in November 1992, they were granted an irreconcilable-differences divorce by the Newton County Chancery Court. Together they had one child, Priscilla Hester (Priscilla), who was born on August 4, 1988. The chancery court approved the couple’s property-settlement and child-custody agreement, which gave Samples primary legal and physical custody of Priscilla, and Hester agreed to pay $200 a month in child support, along with certain medical expenses, half of the educational expenses, and health insurance for Priscilla.
 

 ¶ 3. After the divorce, Samples moved to Longview, Texas, and remarried. In November 2004, Samples and Priscilla began
 
 *386
 
 having disagreements, and Samples kicked Priscilla out of her home and requested that Hester come to get her. Instead of moving to Mississippi, Priscilla stayed in Texas and lived with her friend, Maria, and Maria’s mother from November 2004 until May or June 2005. During that time, Hester claims he made child-support payments directly to Priscilla for rent to Maria’s mother and for other living expenses. Priscilla lived with Hester in Mississippi throughout the summer of 2005, but she moved back in with her mother in Texas once school resumed.
 

 ¶ 4. After an argument with her stepfather, Dwayne Samples, in October 2005, Priscilla moved into her own apartment in Texas. Hester claims that he made child-support payments in the form of rent directly to Priscilla’s landlord through the end of July 2006 when Priscilla moved back to Mississippi to live with Hester and attend college. Priscilla was emancipated in December 2006.
 

 ¶ 5. Around September 2007, Samples sought assistance from the Texas Attorney General’s Office to obtain past-due child-support payments she claimed she was owed for Priscilla. The case was subsequently referred to the Mississippi Department of Human Service (DHS) and then to the Newton County Department of Human Services (Newton County DHS), whereby the Newton County DHS filed a notice of redirection of child-support payments on June 4, 2008.
 

 ¶ 6. On September 9, 2008, DHS filed a contempt action in the chancery court on behalf of Samples, claiming that Samples had received services under Title IV-D of the Social Security Act; therefore, DHS was authorized to bring suit to collect the past-due child-support payments from Hester. The complaint alleged Hester was in arrears of $18,850 for the nonpayment of child support from May 5, 1992, to June 30, 2008. DHS asked the chancery court to withhold Hester’s employment check to pay off the child-support debt, as well as health insurance for Priscilla. A hearing was set before a Family Master for September 17, 2008, and Hester was given proper notice.
 

 ¶ 7. The record is unclear as to the exact date of the occurrence, but when the parties appeared before the Family Master, a question arose concerning an affidavit (the Texas affidavit) that Samples had signed in 2007 from the Texas Attorney General’s Office, which detailed Hester’s child-support payments from 1992-2007. Although the Family Master requested the document, DHS failed to obtain the affidavit from Texas. Thus, the Family Master continued the case until the affidavit could be produced. Notwithstanding the continuance, Hester never made any further inquiries into the matter of the affidavit.
 

 ¶ 8. After several orders for continuance, the attorney for the Newton County DHS filed an agreed order for substitution of counsel on May 6, 2009, which the chancery court granted on May 7, 2009. A settlement conference was scheduled for July 21, 2009, and a trial date set for July 22, 2009. The chancellor then allowed DHS to withdraw its suit on July 22, 2009, on behalf of Samples, and he allowed Samples to refile a contempt petition in her own name against Hester on August 14, 2009. When DHS withdrew from the case, Samples hired a new attorney to represent her, and the chancery court granted a substitution to accommodate Samples’s new counsel.
 

 ¶ 9. In her complaint, Samples initiated the same request to recoup the past-due child support, claiming Hester had not paid any child support since the initial court order in 1992, owing her over $29,000. She also asserted that Hester owed $510 in medical and insurance co-pay
 
 *387
 
 costs; $2,171 in dental costs; $3,200 in pre-K and kindergarten costs; $5,607.56 in health-insurance costs; and owed her attorneys’ fees.
 

 ¶ 10. Hester propounded his first set of interrogatories to Samples on July 24, 2009. The chancery court issued an order on August 4, 2009, allowing Samples to revise her petition and serve it on Hester. The chancery court also ordered the parties to complete discovery by September 14, 2009; rescheduled the settlement conference for November 2, 2009; and reset the trial for November 3, 2009. Samples served Hester with her first set of interrogatories and requests for production of documents on August 13, 2009. She also served Hester with an amended complaint, which claimed that Hester was in arrears of $29,061 in back child support from May 1992 to August 2008; $510 in medical and insurance costs; $2,171 in dental costs; and $3,200 for pre-K and kindergarten costs.
 

 ¶ 11. The trial began on November 3, 2009. Hester and Samples were the only witnesses to testify at trial. Hester testified that he timely paid all of his child support to Samples until Samples moved in June 1998. He wired her the money through Western Union MoneyGram (Western Union). He stated that he would also give Samples cash when he visited Texas to see Priscilla. Hester produced records from Western Union showing the payments from 2004 to 2008. However, he was unable to produce records of payments made before 2004. Hester also claimed that the lack of payments made prior to 2004 was due to Samples having moved, and he was unable to locate the family. He further claimed that Western Union notified him that three of his child-support payments had not been retrieved by Samples.
 

 ¶ 12. Samples testified that Hester did not pay her any money from May 1992 until January 2005. She admitted that Hester sent money in 2005 and 2006, but not in 2007. On cross-examination, Hester’s attorney attempted to offer a portion of the Texas affidavit into evidence, stating that he had received the affidavit from the Newton County DHS attorney. Samples’s attorney objected to the affidavit as hearsay, and the chancery court sustained the objection, noting that the record could not be shown to be authentic or accurate.
 

 ¶ 13. On November 20, 2009, the chancery court issued its final judgment, holding Hester in contempt for his willful failure and refusal to pay child support in the sum of $23,761 for the period of May 1, 1992, through December 31, 2006. The chancellor ruled that Hester had failed to pay any child support from May 1992 through December 2004. However, because Priscilla had failed out of college, the chancellor ordered that she was deemed emancipated in December 2006. Therefore, Hester was only responsible for child-support payments from May 1992 through December 2006. The order specifically stated the amount and date of certain child-support payments Hester had made over the years, all of which were either in 2005 or 2006. The order also stated that Hester must pay $2,500 for Samples’s attorneys’ fees and pay the court costs associated with the case, plus interest. The chancellor credited Hester for payments he claimed to have made in 2004, and for the time Priscilla lived with him in 2006, but not for payments he made directly to Priscilla while she lived with Maria and Maria’s mother from December 2004 to May 2005.
 

 ¶ 14. Hester then filed a motion for reconsideration of the final judgment on November 25, 2009. Hester had received a fax from the former attorney for DHS,
 
 *388
 
 which included an affidavit from the Texas Attorney General’s Office. The affidavit, signed by Samples in 2007, appeared to contradict her previous testimony that Hester did not pay child support from 1992 through 2005. Conversely, Samples attested that Hester had paid $19,500 in direct payments to Samples for child support since 1992. However, Samples testified at trial that she had never received any payments from Hester since the initial child-support order in 1992. Because of this, Hester argued that the amount of the final judgment should be reduced.
 

 ¶ 15. Meanwhile, Samples filed a motion to find Hester in contempt of court for failing to pay her the full amount of $2,500 in attorneys’ fees that were included in the chancery court’s final judgment. The chancellor set a hearing for the matter on February 19, 2010, which was later rescheduled to March 11, 2010. Samples also filed a suggestion for writ of garnishment against Hester, requesting that the chancery court garnish Hester’s wages for the full amount of past-due child support ordered by the chancery court in November 2009.
 

 ¶ 16. At the hearing on the motion to reconsider, Samples’s counsel argued that the Texas affidavit and Western Union orders that Hester purported to use as evidence of his child-support payments did not reconcile. During this hearing, Samples was in Houston at MD Anderson Cancer Center, seeking treatment for cancer. Samples’s counsel stated that Hester admitted in his testimony at trial that he made no child-support payments prior to 2004, yet he now sought to be given credit for payments he had allegedly made before 2004. Samples’s attorney also admitted that he had been in possession of the Texas affidavit before trial, but he did not disclose it to Hester because Hester had never requested it in discovery.
 

 ¶ 17. After considering evidence and oral arguments from both parties, the chancery court denied Hester’s motion to reconsider the final judgment. The chancellor found that the affidavit was inadmissible and did not qualify as “newly discovered evidence,” which would allow him to revisit the final judgment. Hester timely appeals.
 

 DISCUSSION
 

 I. Motion for Reconsideration
 

 ¶ 18. Hester claims that his motion for reconsideration should have been granted because the chancery court erred by deeming Samples’s Texas affidavit inadmissible as not being newly discovered evidence and lacking the accuracy customary to Mississippi proceedings. Relief from a judgment or order may be granted based on “newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).” M.R.C.P. 60(b)(3). The party seeking a motion for a new trial must file “not later than ten days after the entry of judgment.” M.R.C.P. 59(b). The ten-day deadline also applies to motions to alter or amend judgments. M.R.C.P. 59(e).
 

 ¶ 19. We review a trial court’s ruling regarding the admission or exclusion of evidence under an abuse-of-discretion standard of review.
 
 Richardson ex rel. Richardson v. DeRouen,
 
 920 So.2d 1044, 1048-49 (¶ 10) (Miss.Ct.App.2006) (citations omitted). Unless the error adversely affects a substantial right of a party, we will not disturb a trial court’s decision regarding the admission or exclusion of evidence.
 
 Id.
 
 at 1049 (citation omitted). “The decision to grant relief under Rule 60(b) is a matter left to the sound discretion of the trial court, and our review is limited strictly to determining if there was
 
 *389
 
 an abuse of discretion.”
 
 Id.
 
 at 1050 (¶ 16) (citations omitted).
 

 ¶ 20. Hester claims that the chancery court erred by ruling that the Texas affidavit was not newly discovered evidence. “A motion based upon newly discovered evidence may not be granted unless it can be shown that (1) the evidence was discovered following the trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is material and not cumulative or impeaching; [and] (4) the evidence is such that a new trial would probably produce a new result.”
 
 Goode v. Synergy Corp.,
 
 852 So.2d 661, 663 (¶ 8) (Miss.Ct.App.2003) (citation omitted).
 

 ¶ 21. On appeal, Hester claims that days after the trial, he received, via fax, the Texas affidavit, which was purported to have been completed by Samples in 2007. This affidavit lists handwritten dates and amounts of payments Samples claimed Hester had made from May 1992 until September 2007. The dates are not uniformly listed according to the month, year, and amount paid. Some of the payments include a month and year, while other payments are listed only by the total for the year.
 

 ¶ 22. At the hearing on the motion for reconsideration, the chancery court noted that the Newton County DHS had the Texas affidavit in its possession at the time it filed the notice of redirection of child-support payments; when it filed a petition for contempt; and at the time of trial. Therefore, the evidence could not properly be considered as newly discovered. Further, Hester testified on cross-examination at the hearing that he knew before trial that the Texas affidavit existed. Specifically, he admitted that “Texas” told him before the trial that there was an affidavit made by Hester.
 

 ¶ 23. He also testified on proffer that in 2008, when he met with a representative from the Newton County DHS, the representative provided him with the same figures Samples had obtained. Hester countered Samples’s claims by giving the DHS representative copies of his Western Union records. However, Hester stated that the Newton County DHS failed to provide him with the Texas affidavit at that time. At the initial hearing before the Family Master, Hester claimed that upon the Family Master’s request for the Texas affidavit, DHS’s attorney stated “there was no affidavit,” and said that all she had was a letter from Texas. The Family Master ruled that the trial could not proceed because DHS did not provide the Texas affidavit, which was required to collect past-due child support.
 

 ¶ 24. Hester further claimed that he contacted “Texas” after the initial hearing, and “Texas” refused to provide him with the affidavit, but he was informed that the Mississippi DHS was in possession of the affidavit. Hester’s attorney asserted that he made a reasonable and diligent effort to obtain all of the necessary discovery from the Newton County DHS, but for whatever reason, it was not provided to him. During the trial on the merits, the chancellor reminded Hester’s attorney that he had previously told him, “I should like to have had something from the State of Texas,” regarding the past-due child-support payments Samples claimed Hester had made prior to 2004. Hester’s attorney did not respond, nor did Hester file a subpoena for these records. Instead, Hester claims he relied upon the former DHS attorney’s assertions that she had given him everything she had and that the affidavit did not exist.
 

 ¶25. We fail to see how the Texas affidavit could be considered newly discovered evidence. Hester admitted at trial
 
 *390
 
 that he knew about the Texas affidavit well before the trial commenced. The Family-Master informed both parties that the Texas affidavit was needed in order to make his ruling. Yet Hester never filed a subpoena to the Mississippi DHS, Newton County DHS, or the Texas Attorney General’s Office to obtain the document.
 

 ¶26. Moreover, the majority of Hester’s arguments concern misrepresentations he alleges were made by the Newton County DHS attorney involved in the initial action. But he neglected to subpoena the attorney to testify at the hearing on the motion for reconsideration. “A plaintiff cannot fail to investigate important information and then attempt to assert that information as new evidence at the end of the trial.”
 
 Goode,
 
 852 So.2d at 664 (¶ 12) (citation omitted). Thus, we find that the Texas affidavit cannot be shown to be newly discovered evidence, and Hester failed to demonstrate due diligence to discover the Texas affidavit.
 

 ¶ 27. We also find Hester fails to establish that the Texas affidavit is material and that its admission at trial would have produced a different result. Hester claims that portions of the Texas affidavit more accurately reflect child-support payments made from 1992 until 1996. In this regard, Hester is asking this Court to choose only those payments listed in the Texas affidavit, which are beneficial to him and which differ from those claimed at trial, rather than those documented by Western Union’s records and presented during the trial testimony. The chancellor correctly declined this impermissible cherry-picking of child-support payments.
 

 ¶ 28. In its ruling on the admissibility of the Texas affidavit at the hearing on the motion for reconsideration, the chancery court made several comments regarding the accuracy of the Texas affidavit, noting that the payments submitted were not broken down by month and year. The chancellor stated: “It just does not appear to ... have the accuracy of the documents that we normally get from the Department of Human Services which indicates monthly payments.”
 

 ¶ 29. The chancellor further commented that the affidavit had no uniformity nor specificity to it except for the year(s) in which Samples claimed Hester had made payments. For instance, for the years 1993, 1995, 1996, and 2004, the payments were listed in one lump sum, rather than being listed as payments made each month. Because the payments were not broken down on a monthly basis, the chancery court questioned the accuracy of the record.
 

 ¶ 30. Further, the chancery court noted that the Texas affidavit contradicted Hester’s trial testimony regarding payments he had made in 2005. Based on his testimony and the evidence he produced from the Western Union receipts, the chancery court had already awarded Hester a credit of over $5,000 for the year 2005. However, the Texas affidavit stated that Hester had only paid $2,400 during that year. Therefore, if the chancery court had accepted the Texas affidavit, Hester’s credit would have been reduced by more than half for that year. Further, at some point, Hester was given a $10,000 credit at trial. Yet according to the Texas affidavit, Hester would only have been entitled to a $4,000 credit, resulting in $6,000 less than the credit he was originally awarded after the initial judgment.
 

 ¶ 31. Hester had an opportunity to set the record straight on the payments he had made over the years to Samples. In Samples’s first set of interrogatories, she asked Hester to state the payments he had made to her over the years. Hester answered, “See documents attached,” refer-
 
 *391
 
 eneing Western Union records from 2004 to 2008. Hester claims that Western Union would not provide him with records prior to 2004. But his subpoena to Western Union only asked for records from 2004 to the present. At trial, Hester admitted that he made no payments to Samples from 1998 to 2004, because he did not know where Samples was living. His responses to Samples’s interrogatory and his trial testimony support the fact that he did not make any payments from 1998 until 2004, when the Western Union records indicate the payments began.
 

 ¶ 32. Moreover, for a new hearing to be granted, Hester must also prove that had the Texas affidavit been admitted, it would have produced a new result.
 
 Goode,
 
 852 So.2d at 667 (¶ 21). In support of this argument, Hester claims that because Samples’s testimony conflicted with the statements made in her Texas affidavit, the chancery court would have had the option to dismiss the case. The Texas affidavit was not the only proof that Hester could have provided to counter Samples’s claims that he had paid no child support prior to 2004. Again, in Hester’s subpoena duces tecum to Western Union, he only asked for records dating back to 2004.
 

 ¶ 33. The chancellor further noted during the post-trial motion for reconsideration, that if he were to go by the Texas affidavit, Hester would lose approximately $6,000 that he had already received as credit. Samples argues that Hester is attempting to receive credit for payments made prior to 1998, as shown on the Texas affidavit, but also trying to keep the additional credit he received at trial for the years 2004 to 2008. Thus, Hester failed to prove that the outcome would have been different had the Texas affidavit been admitted. In fact, even if the outcome had been proven to be different, it would likely be in Samples’s favor.
 

 ¶ 34. Therefore, we find that the chancellor did not abuse his discretion in denying Hester’s motion for reconsideration. Hester never used due diligence to obtain the Texas affidavit, even though he knew of its existence and was instructed by the Family Master that it was needed. The chancellor at the trial on the merits also referenced the document and informed Hester he wanted to see the document, yet Hester failed to take the steps necessary to attempt to procure it. Even if Hester could demonstrate that the Texas affidavit would produce a new result if admitted— albeit one which may not be in his favor— we find that he is unable to meet his burden to prove all of the required elements for a new trial. Therefore, we find this issue lacks merit.
 

 II. Failure to Award Hester Credit for Payments Made
 

 ¶ 35. For the first time on appeal, Hester claims that the chancellor failed to give him full credit for payments made for Priscilla’s rent and living expenses while Priscilla was living on her own, as well as failure to give him credit for money he paid for Priscilla’s college tuition.
 

 ¶ 36. An appellant may not raise a new issue on appeal that he had not first presented to the trial court for determination. Mc
 
 Donald v. McDonald,
 
 39 So.3d 868, 885 (¶ 54) (Miss.2010) (citation omitted). Hester filed a motion for reconsideration on November 25, 2010. In that motion and at the hearing, he did not raise the issues of the chancellor’s failing to give him credit for these payments, which he now asserts should have been given to him. Hester is procedurally barred from raising these claims now on appeal. Accordingly, this issue is procedurally barred.
 

 
 *392
 
 III. Attorneys’ Fees
 

 ¶ 37. Hester’s final argument is that this Court should remand this case to the chancery court for the imposition of sanctions in the form of attorneys’ fees and costs against Samples and her attorney. Hester cites generally to Mississippi Rule of Appellate Procedure 36, stating that should this case be reversed, Samples would be responsible for paying the court costs. Mississippi Rule of Appellate Procedure 36(a) states in pertinent part that if a case is reversed on appeal, the appellee shall pay the costs associated with the appeal, unless the court orders otherwise. Because we have found no reversible error in this case, Hester’s request is moot.
 

 ¶ 38. THE JUDGMENT OF THE NEWTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., MYERS, BARNES, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR. IRVING AND GRIFFIS, P.JJ., AND MAXWELL, J„ CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.